917 F.2d 1313
 286 U.S.App.D.C. 383
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
The GODDARD ENGINEERS ASSOCIATION, et al.
v.
NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al.
 No. 90-5102.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 13, 1990.
 
 Before SILBERMAN, HENDERSON and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on an appeal from the United States District Court for the District of Columbia. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying opinion, it is
 
 
 2
 ORDERED and ADJUDGED that the decision from which this appeal has been taken be affirmed.
 
 
 3
 It is FURTHER ORDERED that the clerk withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b).
 
 MEMORANDUM
 
 4
 The appellants, The Goddard Engineers, Scientists and Technicians Association, The Marshall Engineers and Scientists Association and The Lewis Engineers and Scientists Association (the Associations),[1] appeal from the March 28, 1990 order of the district court denying their motion for a preliminary injunction to restrain the National Aeronautics and Space Administration (NASA) from initiating mandatory random drug testing of the Associations' members. The grant or denial of a preliminary injunction will not be disturbed on appeal except for abuse of discretion. Foltz v. U.S. News & World Report, 760 F.2d 1300, 1306 (D.C.Cir.1985); Ambach v. Bell, 686 F.2d 974, 979 (D.C.Cir.1982). Because we find no abuse of discretion here, we affirm the district court's decision.
 
 I.
 
 5
 On September 15, 1986, President Reagan issued Executive Order No. 12,564 directing each executive agency to adopt various measures to achieve a drug-free workplace, including establishment of drug testing programs for "employees in sensitive positions". 51 Fed.Reg. 32,889 (1986) Sec. 3(a). Accordingly, NASA developed a "Plan for a Drug-Free Workplace," which, inter alia, provides for random drug testing of employees who hold "Testing Designated Positions" ("TDPs").[2] The Associations represent 158 NASA employees who hold such positions and are therefore subject to random drug testing.
 
 
 6
 On April 4, 1989, the Associations commenced this action in the United States District Court for the District of Columbia alleging that the proposed drug testing would violate their members' right to be free from unreasonable search and seizure under the fourth amendment to the United States Constitution. At the same time, the Associations moved for a preliminary injunction restraining NASA from testing their members. Although the NASA plan creates six categories of TDPs,[3] the Associations' motion challenged the drug testing of only those employees in "Principal Function Positions," whom NASA asserts must be tested to prevent injury to persons and property.
 
 
 7
 Following a hearing held on March 20, 1990, the district court issued an order denying the Associations' motion. The Associations now seek remand or reversal of that order, asserting the district court abused its discretion in withholding injunctive relief.
 
 
 8
 In deciding a motion for preliminary injunction, a court must consider and weigh four factors: (1) the likelihood that the party seeking the injunction will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed without the injunction; (3) the prospect that others will be harmed if the injunction issues; and (4) the public interest. Population Institute v. McPherson, 797 F.2d 1062, 1078 (D.C.Cir.1986); Wisconsin Gas Co. v. FERC, 758 F.2d 669, 673-74 (D.C.Cir.1985). This balancing test is a flexible one, permitting a court to issue injunctive relief when the likelihood of success is high, although probability of irreparable harm may be low, and vice versa. Population Institute, 797 F.2d at 1078. Applying this test, the district court concluded the Associations had failed to show sufficient probability of harm or likelihood of success to justify the relief they sought. On appeal the Associations challenge both conclusions and, in addition, assert that the district court' findings of fact and conclusions of law are generally inadequate and in some instances inaccurate. We find these grounds insufficient to warrant either remand or reversal.
 
 
 9
 While the test for a preliminary injunction is a flexible one, it always requires some showing that the moving party is likely to prevail on the merits. No matter how great the probability of irreparable harm in the absence of the requested relief, the movant must also demonstrate, at the least, " 'serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation and thus for more deliberate investigation.' " See Population Institute, 797 F.2d at 1078 (quoting Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C.Cir.1977)). Further, the burden of establishing a likelihood of success rests on the party or parties seeking the injunction. See Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C.Cir.1977) (" 'One moving for a preliminary injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of the hardships tips sharply in his favor" ') (quoting Charlie's Girls, Inc. v. Revlon, Inc., 483 F.2d 953, 954 (2d Cir.1973)); District 50, United Mine Workers of Am. v. International Union, United Mine Workers of Am., 412 F.2d 165, 167 (1969) ("A party seeking injunctive relief must show both that it will suffer irreparable harm if an injunction is not issued and that there is a substantial likelihood it will prevail on the merits when the case is tried."). We agree with the district court that the Associations failed to sustain their burden of demonstrating likelihood of success on their fourth amendment claim and we therefore affirm its denial of the motion for preliminary injunction.
 
 
 10
 It is now well established that urinalysis compelled by the government is a search subject to fourth amendment protection and may be upheld only if reasonable, that is, if the government's legitimate, non-law enforcement needs for testing outweigh the privacy expectations of the individuals to be tested. Skinner v. Railway Labor Executives Ass'n, 489 U.S. 602, 103 L.Ed.2d 639, 109 S.Ct. 1402 (1989); National Treasury Employees Union v. Von Raab, 489 U.S. 656, 103 L.Ed.2d 685, 109 S.Ct. 1384 (1989); Harmon v. Thornburgh, 878 F.2d 484 (D.C.Cir.1989), cert. denied sub nom. Bell v. Thornburgh, --- U.S. ----, 107 L.Ed.2d 949, 110 S.Ct. 865 (1990); National Fed'n of Fed. Employees v. Cheney, 884 F.2d 603 (D.C.Cir.1989), cert. denied, --- U.S. ----, 107 L.Ed.2d 948, 110 S.Ct. 864 (1990); American Fed'n of Gov't Employees v. Skinner, 885 F.2d 884 (D.C.Cir.1989), cert. denied, --- U.S. ----, 109 L.Ed.2d 321, 110 S.Ct. 1960 (1990). Thus, to assess the Associations' likelihood of prevailing on the merits, the district court was required to balance the governmental need for testing the Associations' members against the individual members' privacy interests. Such a balance can be struck, however, only when the factual record is sufficiently developed to reveal the nature of the duties performed by the particular employees to be tested and whether those duties implicate the needs alleged by the government. See Von Raab, 489 U.S. at ----, 103 L.Ed.2d at 709-10, 109 S.Ct. at 1396-97 (remanding because record failed to demonstrate whether all employees designated for testing because of access to classified material were likely to gain access to sensitive material); Cheney, 884 F.2d at 611-12 (remanding for development of more complete factual record concerning responsibilities of Army civilian employees in "chemical and nuclear surety positions" designated for testing); cf. American Fed'n of Gov't Employees, 885 F.2d at 889-91 (examining specific duties of tested employees to determine whether drug testing was reasonable on safety ground). Because the Associations failed to provide such a record, we conclude they did not sustain their burden of demonstrating a likelihood of success on the merits.
 
 
 11
 The Associations' motion challenged the drug testing plan on the ground that the need for testing alleged by NASA, the protection of person and property, is not sufficiently compelling under the circumstances to outweigh the privacy interests of the Associations' members so as to render the testing reasonable under the fourth amendment. Whether the Associations can prevail on this claim turns largely on whether the duties performed by the individual members are so inherently hazardous that a momentary lapse by a drug-impaired employee could result in significant injury. See Skinner, 489 U.S. at ----, 103 L.Ed.2d at 667, 109 S.Ct. at 1419 (post-accident testing of railroad employees is reasonable because they "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences"); Von Raab, 489 U.S. at ----, 103 L.Ed.2d at 705-09, 109 S.Ct. at 1393-96 (pre-promotion testing for positions requiring the use of firearms is reasonable to ensure that the public will not "bear the risk that employees who may suffer from impaired perception and judgment will be promoted to positions where they may need to employ deadly force"); Cheney, 884 F.2d at 610-11 (random testing of Army air traffic controllers, pilots and aircraft mechanics and attendants is reasonable because "[a] single drug-related lapse by any covered employee could have irreversible and calamitous consequences"). It was therefore incumbent on the Associations, as the moving parties, to provide evidence of the specific duties performed by their members and to demonstrate thereby that those duties are not so inherently hazardous as to justify drug testing. This they failed to do.
 
 
 12
 The only evidence the Associations submitted concerning specific members occupying TDPs consists of three short documents relating to ten laboratory scientists who apparently work with hazardous chemicals or machinery. Although those documents describe some of the safety precautions taken in the NASA laboratories, they fail to identify the kinds of machinery or chemicals involved or the uses to which they are put.[4] Further, the Associations submitted no evidence concerning the work performed by the other 148 members subject to testing. Without that information the district court was unable to balance the governmental need for testing against the employee's privacy interests to determine that the testing program is or is not reasonable under the fourth amendment.
 
 
 13
 Because the Associations failed to produce evidence essential to assess the merits of their fourth amendment claim, we find no abuse of discretion in the district court's denial of their motion. While the district court's brief order lacks legal precision[5] and factual detail,[6] its one essential conclusion, that the Associations failed to meet their burden of demonstrating a likelihood of success on the merits, is fully supported and sufficient by itself to warrant denial of the Associations' motion.
 
 
 14
 For the reasons set forth above, the order of the district court is
 
 
 15
 Affirmed.
 
 
 
 [1]
 NASA has pointed out that the notice of appeal identifies the appellants as "Goddard Engineers, Scientists and Technicians Association, et al, the above named plaintiffs," raising a question whether the other two associations perfected their appeals so as to be properly before the court. Both NASA and the Associations agree that all three associations should be deemed to have perfected their appeals because they are all named in stay papers filed with this court on May 9, 1990. Because the presence vel non of the two associations not named in the notice has no effect on the substantive issues that must be decided, we find it unnecessary to decide whether their appeals have been perfected
 
 
 [2]
 The plan establishes six categories of TDPs: (1) Sensitive Positions, (2) Positions with Security Clearance, (3) Presidential Appointment Positions, (4) Law Enforcement Positions, (5) Principal Function Positions and (6) Other Sensitive Positions
 
 
 [3]
 See supra note 2
 
 
 [4]
 The Associations submitted somewhat more detailed evidence concerning the duties of six cryogenic engineers whose jobs were then, but are no longer, classified as TDPs
 
 
 [5]
 The district court's order appears to confuse the test for preliminary injunction with the fourth amendment reasonableness test, balancing the potential hardship to the Associations' members against NASA's need for testing, namely its interest in national security and public safety. J.A. at 221-22
 
 
 [6]
 We recognize that the sparse record makes detailed factual findings difficult. Nevertheless, the district court could, at a minimum, have identified those issues on which the Associations failed to make an adequate evidentiary showing. See Fed.R.Civ.P. 52(a)